Filed 10/21/20  P. v. Woods CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CEDRIC J. WOODS,<br><br>    Defendant and Appellant. | B297732<br><br>(Los Angeles County<br>Super. Ct. No. KA033813) |


APPEAL from an order of the Superior Court of the County of Los Angeles, Salvatore Sirna, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

# I.    INTRODUCTION

Defendant Cedric J. Woods appeals from the trial court's order denying his petition under Penal Code section 1170.95[1] for resentencing on his murder and attempted murder convictions. According to defendant, the trial court erred by summarily denying his petition without first issuing an order to show cause and conducting an evidentiary hearing.  He further contends that the trial court erred by denying his petition on the alternative ground that Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) is unconstitutional.  We affirm.

# II.    FACTUAL BACKGROUND[2]

On August 16, 1997, the murder victim, 12-year-old D.W. (the victim), and 16-year-old M.H. (the attempted-murder victim) were sitting in Kennedy Park in Pomona with W.I. and another companion.  The attempted-murder victim saw a large four-door maroon car in "'bad shape'" emerge from a nearby housing area. The front passenger made a gang sign for the Westside Mafia. The car then turned around, entered the park, and stopped in a parking lot.  When four men exited the car, the attempted-murder victim told the victim to get on his bicycle and leave.  The victim rode away, and the attempted-murder victim ran with

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    The facts are taken from the opinion in the direct appeal from the judgment of conviction.  (*People v. Woods* (Apr. 8, 1999, B121999 [nonpub. opn.].)

him.  At some point, the attempted-murder victim took control of the bicycle while the victim rode on the handlebars.

The four men got back into the car and followed the two minors.  The victim warned that one of the car's doors was open, causing the attempted-murder victim to cross to the opposite side of the street, where he saw the passenger-side door of the car open and heard gunfire as the car came about two feet from the bicycle.

The minors left the bicycle and ran down a driveway.  The attempted-murder victim saw blood coming from the victim's side and mouth and, when the victim fell, told bystanders across the street to call the police.

Pomona Police Officer Brian Bozarth responded to a call of a shooting around 2:50 p.m. and found the two minors, both of whom had gunshot wounds.  The victim died from his wounds at the hospital.

The attempted-murder victim told Officer Bozarth that the Westside Mafia had done the shooting.  When the officer asked him if he recognized anyone, he replied, "'Thee Dog.'"  The attempted-murder victim told another officer that Thee Dog was the person with the gun.

Detective Greg Guenther interviewed the attempted-murder victim the day after the shooting.  He admitted that both he and the victim were members of the Trey57 Sintown Crips and that, after the men in the car made Westside Mafia gang signs, the victim responded with Trey57 signs.  He also told the detective that he recognized the right-front passenger as Thee Dog, and he identified Tyrone Hill from a photographic line-up as Thee Dog.

3

Detective Guenther interviewed the attempted-murder victim again a few days later and showed him a photograph of defendant's car which he confirmed looked like the one involved in the shooting. At trial, however, he was more equivocal about the identifications and descriptions.

About a month after the shooting, Detective Guenther interviewed W.I. who selected a photograph of Tyrone Hill, known to him as Thee Dog, as the right-front passenger in the car that chased his two companions from the park. The detective showed W.I. another set of photographs, and he identified defendant, whom he knew as "'Tiny Dot,'" as the driver of the car. But at trial, W.I. denied making the identifications.

When defendant was interviewed after the shooting, he claimed his car had been parked at his residence the entire day of the shooting with a flat tire. According to defendant, he spent the afternoon at a mall and a park with Hill and another man.

Officer Bozarth testified at trial as an expert on Pomona street gangs. He explained that the shooting took place inside territory claimed by the Trey57 Sintown Crips. Defendant and Hill had previously admitted to Officer Bozarth that they were members of the Westside Mafia. The officer confirmed that Hill's gang name was Thee Dog.

Detective Robert Nelson testified that the Westside Mafia Crips were rivals of the Trey57 gang. He explained that making gang signs in a rival gang's territory was a challenge and a gesture of disrespect. Detective Nelson also explained that gang members were generally unwilling or reluctant to cooperate with law enforcement because they preferred to handle matters themselves and because they did not want to be known as "'snitch[es].'"

4

# III.  PROCEDURAL BACKGROUND

In an information, the Los Angeles County District Attorney charged defendant in count 1 with the murder of the victim and in count 2 with the attempted, premeditated murder of the attempted-murder victim.  The District Attorney also alleged that:  the murder was perpetrated by means of discharging a firearm from a motor vehicle at another person outside the vehicle with the intent to inflict death; the attempted murder was committed willfully, deliberately, and with premeditation within the meaning of section 664, subdivision (a); the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang within the meaning of section 186.22, subdivision (b)(1) and (4); and a principal in the commission of the offenses was armed with a handgun within the meaning of section 12022, subdivision (a)(1).

The jury found defendant guilty of murder and attempted premeditated murder.  The jury also found true the allegations that:  the murder occurred during a drive-by shooting within the meaning of section 190.2, subdivision (a)(21); both offenses were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivisions (b)(1) and (b)(4); and a principal was armed with a firearm in the commission of both offenses within the meaning of section 12022, subdivision (a)(1). The trial court sentenced defendant to life without the possibility of parole for the murder conviction and to a consecutive term of 17 years, comprised of a nine-year term for the attempted murder conviction, two three-year terms for the section 186.22 enhancements, and two one-year terms for the section 12022 enhancements.

On April 8, 1999, the Court of Appeal issued its unpublished opinion in defendant's direct appeal from the judgment of conviction, case number B121999. Among other things, the court concluded that there was sufficient evidence showing that defendant "shared the shooter's intent to kill." The court also concluded that the trial court's instructions on the natural and probable consequences doctrine were not erroneous.

On January 3, 2019, defendant, who was represented by counsel, filed his petition for resentencing under section 1170.95.[3] On March 20, 2019, the prosecution filed its opposition to defendant's petition, arguing that the opinion in the direct appeal concluded that there was sufficient evidence to show that defendant shared the shooter's intent to kill. The prosecution also argued that the jury's true finding on the special circumstance allegation under section 190.2, subdivision (a)(21) included a necessary finding that defendant shared the shooter's intent to kill.

On April 2, 2019, defendant filed his reply in support of his petition. In addition to certain constitutional arguments, defendant asserted that he was entitled to resentencing because both his murder and attempted murder convictions were based on the natural and probable consequences doctrine.

---

[3] On January 16, 2019, defendant filed an amended petition that corrected by interlineation his name. In both petitions, defendant requested that attorney Arthur P. Lindars be appointed to represent him. On March 13, 2019, he filed another petition using a standardized form provided for that purpose. That petition listed attorney Lindars as defendant's counsel. On April 19, 2019, the trial court indicated that attorney Lindars had previously been appointed as counsel for defendant.

On April 24, 2019, the trial court issued an order summarily denying the petition because defendant was not entitled to relief as a matter of law.  The court found that "although [defendant] was not the actual killer, [he], with the intent to kill, aided and abetted the actual killer in the commission of the murder."  The court also concluded that defendant's attempted murder conviction did "not qualify for consideration under [section] 1170.95[, subdivision (a)]."  In the alternative, the court ruled that Senate Bill 1437 was unconstitutional.

## III.   DISCUSSION

A.      *Senate Bill 1437's Amendments to Sections 188 and 189 and Addition of Section 1170.95*

"Through section 1170.95, Senate Bill 1437 created a petitioning process by which a defendant convicted of murder under a felony murder theory of liability [or the natural and probable consequences doctrine] could petition to have his conviction vacated and be resentenced.  Section 1170.95 initially requires a court to determine whether a petitioner has made a prima facie showing that he or she falls within the provisions of the statute as set forth in subdivision (a), including that '(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,]  [¶]  (2) [t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be

7

convicted for first degree or second degree murder[, and] [¶] (3) [t]he petitioner could not be convicted of first or second degree murder because of changes to [s]ection[s] 188 or 189 made effective January 1, 2019.' (See § 1170.95, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 [(*Verdugo*)] . . . , review granted Mar. 18, 2020, [S260493].) If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition. (*Verdugo*, [*supra*, 44 Cal.App.5th] at p. 330.) If, however, a determination of eligibility requires an assessment of the evidence concerning the commission of the petitioner's offense, the trial court must appoint counsel and permit the filing of the submissions contemplated by section 1170.95. (*Verdugo,* [*supra*, 44 Cal.App.5th] at p. 332; [*People v.*] *Lewis* [(2020)] 43 Cal.App.5th [1128,] 1140, rev[iew] granted [Mar. 18, 2020, S260598].)" (*People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. omitted.)

B.     *Analysis*

1.     <u>Murder Conviction</u>

Defendant contends that the trial court erred by summarily denying his petition on the murder conviction without first issuing an order to show cause and holding an evidentiary hearing. According to defendant, the jury was instructed with CALJIC No. 8.251 which provided that a murder committed by a perpetrator who discharged a firearm from a motor vehicle at a person outside the vehicle was first degree murder if the perpetrator intended to inflict death. Because the jury was also instructed with CALJIC No. 3.02, defining the natural and

8

probable consequences doctrine, defendant concludes that the instructions allowed the jury to convict him as an aider and abetter of a murder that was the natural and probable consequence of shooting from a motor vehicle.

Although CALJIC Nos. 8.251 and 3.02 may have allowed the jury to convict defendant on an aiding and abetting theory under the natural and probable consequences doctrine, the jury's findings included a true finding on the special circumstance allegation under section 190.2, subdivision (a)(21). On that allegation, the trial court delivered CALJIC No. 8.80.1 which provided, in pertinent part: "If you find that the defendant was not the actual killer of a human being, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant, *with the intent to kill* aided, abetted, or assisted any actor in the commission [of] the murder in the first degree." (Italics added.) Accordingly, the jury's true finding on the special circumstance allegation necessarily included a finding that defendant, who was not the actual killer, aided and abetted the shooting with the intent to kill, i.e., he shared Hill's intent to shoot and kill the victim.[4] In other words, the jury instructions and the special circumstance finding demonstrate that defendant could not have been convicted of first degree murder under a natural and probable consequences theory.

Based on the record of conviction, including the jury's true finding on the special circumstance allegation under section 190.2, we conclude that the trial court did not err by summarily

_____

[4] As noted, the court's opinion in the direct appeal concluded that there was sufficient evidence in the record to support an inference that defendant "shared the shooter's intent to kill."

9

denying the petition because defendant's intent to kill the victim made him ineligible, as a matter of law, for resentencing under section 1170.95. (*Verdugo, supra*, 44 Cal.App.5th at p. 330 [the record of conviction may establish that defendant "is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189"].)

2. Attempted Murder Conviction

Defendant also contends the trial court erred by summarily denying his section 1170.95 petition on his attempted murder conviction. He acknowledges that courts are divided on the issue of whether section 1170.95 applies to attempted murder, but argues the cases holding that section 1170.95 does not apply to attempted murder[5] were wrongly decided. We disagree.

The plain language of section 1170.95 demonstrates that it is limited to: (1) felony-murder convictions or (2) murder convictions under the natural and probable consequences doctrine. Pursuant to that section, defendants "convicted of felony murder or murder under a natural and probable consequences theory may file a petition [for resentencing] . . . ." (§ 1170.95, subd. (a).) Defendants convicted of attempted murder

---

[5] In *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175 (*Lopez*) and *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted November 26, 2019, S258234 (*Munoz*), the courts held that defendants convicted of attempted murder under the natural and probable consequences doctrine are not eligible for section 1170.95 relief.

10

are not mentioned in section 1170.95 and are therefore ineligible for the relief provided by that section.

In light of the express language of section 1170.95, we follow the decisions in *Lopez*, *supra*, 38 Cal.App.5th 1087 and *Munoz*, *supra*, 39 Cal.App.5th 738 and conclude that the trial court did not err by denying the petition on the attempted murder conviction because that conviction was based on an offense that was not eligible for relief under section 1170.95.

      3.     <u>Constitutionality</u>

Defendant additionally challenges the trial court's ruling that Senate Bill 1437 is unconstitutional. The Attorney General concedes that the court's constitutional ruling was erroneous, and we agree. Because the court also correctly denied defendant's petition on the alternative ground that he was ineligible as a matter of law for resentencing based on the record of his conviction, we affirm the denial of the petition on that basis.

## IV.   DISPOSITION

The order denying the resentencing petition under section 1170.95 is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.